**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Case No.:

SASC, LLC d/b/a ACTIVATE
LEARNING,

    Plaintiff,

v.

SCHOOL SUPPLY CONNECTION INC.,
APLUS SCIENCE, and TIMOTHY
PEYTON,

    Defendants.

_____/

## COMPLAINT

Plaintiff, SASC, LLC d/b/a Activate Learning ("SASC") sues Defendants, School Supply Connection Inc. ("SSC"), Aplus Science ("Aplus"), and Timothy Peyton ("Peyton") and alleges:

### THE PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff, SASC, is a Delaware limited liability company with its principal place of business in Greenwich, Connecticut.

2.    Defendant, SSC, is an Ohio corporation with its principal place of business in Dayton, Ohio.

3.    Defendant, Peyton, is a resident and citizen of Ohio. Peyton is the owner of SSC and regularly conducts business in Ohio.

4.    Upon information and belief, Defendant, Aplus, is an entity operated and controlled by Peyton and/or SSC, with its principal place of business in Dayton, Ohio.

5.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) as the amount in controversy exceeds $75,000, exclusive of attorneys' fees, interest, and

costs, and SASC, for diversity purposes, is a citizen of a different state than SSC, Aplus, and Peyton (Ohio citizens for diversity purposes).

6.  This Court has personal jurisdiction over SSC because, among other things, SSC is domiciled in and a resident of Ohio, transacts business in Ohio, solicited business from SASC and performed under the parties' agreement in Ohio, and committed a tortious act in Ohio. This Court has personal jurisdiction over Peyton because, among other things, he is domiciled in and resident of Ohio and committed a tortious act in Ohio. This Court also has personal jurisdiction over Aplus because, among other things, Aplus is domiciled in and a resident of Ohio, transacts business in Ohio, and committed a tortious act in Ohio.

7.  Venue is proper in this district under 28 U.S.C. § 1391 because SSC, Peyton, and Aplus reside in the district, the property at issue is located within the jurisdiction of this Court, and a substantial part of the events at issue occurred in this district.

## FACTUAL ALLEGATIONS

8.  SASC conducts business in the education space and focuses on the creation of various types of educational materials including lesson plans, teaching curricula, textbooks, educational kits, and other educational materials ("Educational Products").

9.  SSC is a supplier and reseller of school supplies and educational materials, including the Educational Products supplied on behalf of SASC. Peyton owns and operates SSC.

10. On or about March 6, 2020, SASC and SSC entered into a vendor agreement ("Vendor Agreement"), under which SSC agreed to perform certain services for SASC, including delivery of its Educational Products to customers.

11. The Vendor Agreement incorporates by reference certain Statements of Work entered between SASC and SSC dated March 6, 2020, January 1, 2021, and April 20, 2022 (altogether, "SOW's," and together with the Vendor Agreement, the "Agreement").

12. Under the Agreement, SSC was obligated to fulfill deliveries of SASC's product orders, including books and professional development items, and for purchasing components of, assembling, storing, and shipping educational kits.

13. SASC purchased certain books composed of teaching manuals, both student and teacher editions, (the "Books") from a third-party vendor that it had delivered to SSC at 4254 Display Lane, Dayton, Ohio 45429 for storage and future shipment to SASC's customers. SASC owns and holds title to the Books; SSC stores the Books during the interim period prior to fulfilling SASC's orders.

14. Under the Agreement, SSC also agreed to purchase component parts, assemble, store, and fulfill orders of prepackaged educational material kits to include both durable and consumable items packaged in a particular mix and configuration, as detailed by SASC's bill of materials, ("Kits")[1] for SASC.

15. Furthermore, under the Agreement, SSC was obligated to conduct an "annual full physical count [of SASC's existing Books inventory] in the first week of January" of each year in order for SASC to verify SSC's inventory and prepare for future orders and demand.

16. In 2021, SASC made an advance payment of $480,000 to SSC for the anticipated handling fees expected to be incurred in 2021, and an identical advance of $480,000 in 2022 ("Handling Fees Advance").

---

[1] The Kits include all kits, and their respective components parts, that are the subject of the SOW including Open Science Education ("OSE") products, as well as IQWST, PRIME, and High School.

3

17. In connection with the Agreement, SASC and SSC also entered into a credit memo dated March 16, 2021 ("Credit Memo").

18. Under the Credit Memo, SSC issued $2,275,000 of credit to SASC in exchange for the transfer to SSC of inventory owned by SASC. SASC was to use the credit to offset amounts due to SSC in 2021, 2022, 2023, and after. The Parties further agreed that "[i]n the event of [the Agreement's] termination, SASC shall . . . utilize the credit memo without limitation . . . for purchases from SSC."

19. As reflected in the April 20, 2022 SOW, in 2022, SASC also made several advance payments to SSC for Open Science Education ("OSE") products, totaling $1,330,000 ("OSE Advances"). Specifically, on

    a) March 15, 2022, SASC paid $322,500 to SSC, representing 20% of 2022 forecasted OSE kit revenue;

    b) April 20, 2022, SASC paid $477,500 to SSC, representing 20% of the additional forecasted OSE kit revenue; and

    c) June 9, 2022, SASC paid $530,000 to SSC, $400,000 of which represented 20% of the additional forecasted OSE kit revenue and the remaining $130,000 represented an advance on long-lead-time products for OSE kits.

20. Thus, between the Handling Fee Advance, Credit Memo, and OSE Advances, SASC advanced a total value of $4,565,000 ("SASC Advances") to SSC.

21. Approximately $2.2 million of SASC Advances remain unused ("Unused Advances") as of this filing and are owed to SASC.

22. While the Agreement automatically renews in one-year intervals, SASC may terminate the Agreement without cause with 120 days' notice to SSC, and, if it elects to do so,

SASC agreed to "buy the remaining kit inventory" from SSC, based on a previously issued monthly forecast.

23. On December 9, 2022, SASC notified SSC of its election to terminate the Agreement, effective April 10, 2023 ("Termination Date").

24. Notwithstanding the termination, SSC was still obligated to fully perform under the Agreement until the Termination Date. In January 2023, however, SSC failed to perform its annual inventory report under the Agreement, thereby breaching the Agreement.

25. As a consequence of SSC's breach, SASC was unable to identify the full extent of its inventory in SSC's possession, including inventory that SASC holds title to and must be returned to SASC by the Termination Date if unsold, such as the Books.

26. SASC also has been unable to determine the full extent of SSC's inventory of pre-packaged Kits. This has frustrated SASC's efforts to coordinate a smooth transition at the Termination Date, which includes SASC's right to purchase available Kits by the Termination Date under the Agreement.

27. Furthermore, despite numerous requests by SASC, SSC has refused to confirm to SASC that it intends to comply with its obligations under the Agreement. Specifically, on March 8, 2023 SASC sent a letter ("Demand Letter") to SSC demanding that SSC confirm by March 10, 2023 that it would comply with obligations under the Agreement to: (a) return all unsold Books to SASC by the Termination Date; (b) sell SASC all unsold Kits as of the Termination Date—including through the application of SASC's Unused Advances; and (c) return all Unused Advances remaining to SASC after their application towards the purchase of Kits on the Termination Date. SASC clarified that if SSC failed to confirm its commitment to continue performing under the Agreement, SASC would seek relief in court.

28. SSC responded to SASC the next day but did not confirm that it would comply with any of its obligations under the Agreement, thus, repudiating its performance obligations under the Agreement and Credit Memo.

29. Rather than confirm its commitment to perform under the Agreement until the Termination Date, upon information and belief, Peyton caused SSC to dispose of some or all of the OSE kits in its possession by fraudulently transferring the OSE kits to Aplus in order to hinder or defraud SASC, its creditor.

30. Peyton and SSC concealed the fraudulent transfer from SASC and, upon information and belief, fraudulently transferred the OSE kits after SASC threatened SSC with this lawsuit.

31. Further, Peyton's and SSC's fraudulent transfer occurred shortly before the Termination Date, at which time SSC is obligated to sell SASC all unsold Kits in its possession and to reimburse SASC all remaining Unused Advances.

32. Peyton's and SSC's transfer to Aplus of OSE kits allows Aplus, and Peyton and/or SSC indirectly, to, among other things, unfairly compete against SASC utilizing the very Kits SASC has available for its exclusive use and sale to its customers.

### COUNT I – ANTICIPATORY BREACH OF CONTRACT
### (against SSC)

33. SASC incorporates by reference paragraphs 1 through 32 as though fully set forth herein.

34. The Parties entered into the valid and binding Agreement and Credit Memo.

35. Despite numerous requests from SASC, SSC refused to confirm its intent to comply with its obligations to perform under the Agreement and Credit Memo, thereby repudiating the Agreement and Credit Memo.

36. Specifically, SSC has anticipatorily breached its obligation to: (a) return all Books to SASC by the Termination Date; (b) sell SASC all unsold Kits as of the Termination Date—including through SASC's use of the Unused Advances; and (c) return all Unused Advances remaining after their application towards the purchase of Kits on the Termination Date.

37. SASC has been damaged as result of SSC's anticipatory breach.

WHEREFORE, SASC respectfully requests that the Court: (1) enter judgment in favor of SASC and against SSC; (2) award SASC damages in an amount no less than $2.2 million, or, in the alternative, order the specific performance of SSC's obligations under the Agreement; (3) award SASC its attorneys' fees, costs, and expenses under the Agreement; and (4) attach any and all of SSC's property for satisfaction of SASC's awarded damages; and (5) grant SASC any additional or other just and proper relief.

### COUNT II – BREACH OF CONTRACT
### (against SSC)

38. SASC incorporates by reference paragraphs 1 through 32 as though fully set forth herein.

39. The Parties entered into the valid and binding Agreement.

40. SSC breached its obligation to perform its full inventory audit in January 2023.

41. SASC has been damages by SSC's breach.

42. WHEREFORE, SASC respectfully requests that the Court: (1) enter judgment in favor of SASC and against SSC; (2) award SASC damages, and its attorneys' fees, costs, and expenses under the Agreement; and (3) attach any and all of SSC's property for satisfaction of SASC's awarded damages; and (4) grant SASC any additional or other just and proper relief.

## COUNT III – REPLEVIN
### (against SSC)

43. SASC incorporates by reference paragraphs 1 through 32 as though fully set forth herein.

44. SASC is the owner of, and, therefore, entitled to possession of the Books, which are stored at SSC's facilities.

45. Despite demand for such Books to be returned to SASC, SSC has refused to return the Books or otherwise makes arrangements for their return to SASC. Thus, SSC remains in wrongful possession of the Books.

46. The Books are in the actual possession of SSC and are located at SSC's facility at 4254 Display Lane, Dayton, Ohio 45429.

47. SASC will suffer significant damages from SSC's wrongful detention of the Books including its inability to satisfy future customer orders and harm to its reputation and goodwill.

WHEREFORE, SASC respectfully requests that the Court: (1) order the return of the Books to SASC; (2) enter judgment in favor of SASC and against SSC; (3) award SASC damages, and its attorneys' fees, costs, and expenses under the Agreement; and (4) grant SASC any additional or other just and proper relief.

## COUNT IV – FRAUDULENT TRANSFER
## UNDER SECTION 1336.04, OHIO REVISED CODE
### (against SSC, Peyton, and Aplus)

48. SASC incorporates by reference paragraphs 1 through 32 as though fully set forth herein.

49. SASC is a creditor of SSC.

50. Upon information and belief, Peyton caused SSC to transfer the OSE kits designated for use and sale by SASC to Aplus with the actual intent to hinder, delay, or defraud SASC.

51. Peyton's and SSC's actual intent is evidenced through certain "badges of fraud" including:

    a) The transfer from SSC to Aplus, an affiliated entity likely owned and controlled by Peyton and/or SSC, was to an insider;

    b) Peyton and/or SSC have retained possession or control of the property transferred to Aplus after the transfer;

    c) Payton and SSC concealed the transfer of the OSE kits from SASC; and

    d) SSC had been threatened suit by SASC before the transfer was made, with which Peyton was aware.

52. Upon information and belief, Peyton and Aplus only transferred the OSE kits to Aplus after SASC notified SSC of its decision to terminate the Agreement and subsequently demanded to purchase the OSE kits and threatened SSC with this lawsuit.

53. The transfer occurred shortly before the Termination Date, at which time SSC is obligated to sell SASC forecasted, unsold Kits in SSC's inventory and to reimburse SASC all remaining Unused Advances.

54. Due to the fraudulent transfer of the OSE kits from SSC to Aplus, SASC has suffered damages.

WHEREFORE, SASC respectfully requests that the Court: (1) enter judgment in favor of SASC and against SSC, Peyton, and Aplus; (2) void the transfer of the OSE kits from SSC to Aplus; (3) alternatively, award SASC damages against Peyton and Aplus; (4) award SASC

damages, and its attorneys' fees, costs, and expenses under the Agreement; and (5) grant SASC any additional or other just and proper relief.

### JURY DEMAND

SASC requests a trial by jury as to all issues triable to a jury.

Dated: March 17, 2023                    Respectfully submitted,

                                                          **GREENBERG TRAURIG, LLP**

                                                          */s/ John R. Richards*
John R. Richards, Esq. (6290558)
richardsjr@gtlaw.com
Greenberg Traurig, LLP
Terminus 200 Building
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone:    678.553.2100
Facsimile:    678.553.2212