## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**SASC, LLC, *doing business as* Active Learning,**

       *Plaintiff, Counterclaim Defendant,*

**v.**                                                                 **Case No. 3:23-cv-083**
                                                                       **Judge Thomas M. Rose**

**School Supply Connection, Inc., *et al.*,**

       *Defendants, Counterclaim Plaintiffs.*

---

**ENTRY AND ORDER DENYING TIMOTHY PEYTON'S MOTION FOR JUDGMENT ON THE PLEADINGS, (DOC. 39), DENYING SCHOOL SUPPLY CONNECTION, INC'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 40.) AND GRANTING IN PART AND DENYING IN PART SASC, LLC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. (DOC. 26.) ALL COUNTERCLAIMS EXCEPT THE FIRST COUNTERCLAIM FOR BREACH OF A CONTRACT TO PAY BONUSES ARE DISMISSED.**

---

Pending before the Court are Defendant Timothy Peyton's Motion for Judgment on the Pleadings, (Doc. 39), Defendant School Supply Connection's ("SSC") Motion for Partial Judgment on the Pleadings, (Doc. 40), and Plaintiff, SASC, LLC d/b/a Activate Learning's Motion to Dismiss for Failure to State a Claim. (Doc. 26). SASC alleges a contractual relationship existed between itself and SSC. SASC has sued SSC and its sole owner, Defendant

Timothy Peyton who have filed counterclaims against SASC, (Docs. 1, 21), leading to the filing of the motions under consideration.

On March 17, 2023, Plaintiff SASC, LLC, doing business as Activate Learning, filed suit against Defendants School Supply Connection, Inc., APlus Science, and Timothy Peyton, asserting: Count I–Anticipatory Breach of Contract (against School Supply Connection); Count II –Breach of Contract (against School Supply Connection); Count III–replevin; and Count IV–Fraudulent Transfer Under Ohio Rev. Code Section 1336.04. (Doc. 1.)

School Supply Connection's answer includes counterclaim that assert: First Cause of Action–Breach of Contract; Second Cause of Action–Abuse of Process; Third Cause of Action–Malicious Civil Prosecution; Fourth Cause of Action–Wrongful Attachment; Fifth Cause of Action–Frivolous Conduct and/or Tortious Interference with Prospective Business; Sixth Cause of Action–Express, Implied, and/or Promissory Estoppel; and Seventh Cause of Action Quantum Meruit. (Doc. 21.)

**Background**

SASC alleges that SSC is a "supplier and reseller of school supplies and educational materials, including the Educational Products supplied on behalf of SASC." (Doc. 1, Compl. at ¶9.) Timothy Peyton allegedly owns and operates SSC as its sole shareholder. (Id. at ¶4.; Doc. 21, Counterclaim at ¶8.) SASC alleges that APlus is another entity operated and controlled by Peyton and/or SSC. (Doc. 1, Compl. at ¶4.)

SASC and SSC allegedly entered into a vendor agreement under which SSC agreed to perform certain services for SASC, including delivery of its educational products to customers. (Id. at ¶10.) SASC alleges that under the Agreement, SSC also agreed to purchase component parts, assemble, store, and fulfill orders of prepackaged educational material kits to include both

durable and consumable items packaged in a particular mix and configuration for SASC. (Id. at ¶14.) SASC advanced a total of $4,565,000 to SSC so that SSC could in turn purchase materials for SASC's benefit. (Id. at ¶¶18-19.) Approximately $2.2 million of those advances were allegedly outstanding at the time of the filing of the Complaint. (Id. at ¶21.)

Upon termination, SASC claims it is entitled to buy from SSC the remaining inventory purchased using the SASC advances. (Id. at ¶22.) SASC alleges that it has requested on numerous occasions that SSC provide it with an inventory report detailing how much SASC inventory remains in SSC's warehouse, but SSC has refused to provide this inventory report and allegedly refused to allow SASC to purchase back its materials. (Id. at ¶¶24, 26, 27.)

SASC alleges that, instead, Peyton caused SSC to dispose of some of SASC's materials by allegedly fraudulently transferring the materials to APlus in order to hinder or defraud SASC. (Id. at ¶29.) Peyton and SSC allegedly concealed the fraudulent transfer from SASC and allegedly fraudulently transferred the materials after SASC threatened to sue SSC. (Id. at ¶30.) Peyton's and SSC's transfer of SASC materials to APlus has allegedly allowed APlus, and Peyton and/or SSC indirectly, among other things, to resell SASC's materials to APlus's customers. (Id. at ¶32.) SASC has allegedly suffered and damages as a direct result of the above allegedly unlawful conduct. (Id. at 54.)

On March 17, 2023, SASC filed suit in this Court. (Doc. 1.)

**Standard**

Peyton and SSC bring their motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan*

*Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir.2007) (internal citation and quotation marks omitted). A motion brought pursuant to Rule 12(c) is appropriately granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." Id. at 582 (internal citation and quotation marks omitted).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level...." Id. at 1964–65 (internal citations omitted). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 550 U.S. 89, 93, 127 S. Ct. 1966 (2007)(quoting *Twombly*, 127 S. Ct. at 1964).

**Analysis**

Defendant Timothy Peyton seeks dismissal of Count IV, the only claim against him, both because, he alleges, SASC failed to plead facts that would support piercing the corporate veil to pursue him personally and because APlus Science, to which property of SASC was allegedly wrongfully transferred, is a fictitious entity. (Doc. 39.) Count IV alleges that Peyton caused SSC to dispose of some or all of SASC's materials in School Supply Connection's possession by fraudulently transferring those materials to APlus in order to hinder or defraud SSC's alleged creditor SASC and conceal the fraudulent transfer after SASC threatened Defendants with this lawsuit. (Doc. 1, Compl. at ¶¶6, 29, 30.)

4

Now, SSC and Peyton assert that the alleged transfer to APlus was an impossibility because APlus is a fictious name registered by SSC. (Doc. 39, 40.) Timothy Peyton further seeks to dismiss this, the only claim that names him as a defendant, as he is merely a shareholder of SSC, which does not make him liable for the corporation's actions. (Doc. 39, PageID 1069.)

Piercing the corporate veil under Ohio law requires: (1) control over the corporation by those to be held liable was complete; (2) control was exercised in such a manner as to commit fraud, an illegal act, or a similar unlawful act against the person seeking to disregard the corporate entity; and (3) injury or unjust loss resulted to the plaintiff from such control and wrong. *Dombroski v. WellPoint, Inc.*, 895 N.E.2d 538, 545 (Ohio 2008); *see also Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 1993-Ohio-119, 67 Ohio St. 3d 274, 617 N.E.2d 1075 (Ohio 1993).

Peyton contends that SASC was required to explicitly allege they are seeking to pierce the corporate veil in the Complaint. (Doc. 39, PageID 1069, Mot. at 7.) However, in Ohio a complaint seeking to pierce the corporate veil which recites the elements of the *Belvedere–Dombroski* test, is sufficient to carry the plaintiff's pleading burden for purposes of a motion to dismiss. *Kurtz Bros. v. Ace Demo, Inc.*, 2014-Ohio-5184, ¶¶ 28-30, 24 N.E.3d 649, 654 (Ohio App. 2014). While a plaintiff who seeks to satisfy the *Belvedere–Dombroski* test by alleging fraud must meet the heightened pleading requirements imposed by Rule 9(b), *Southeast Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006), the *Belvedere–Dombroski* test may be satisfied by alleging fraud or "an illegal act, or a similarly unlawful act." *Kurtz Bros.*, 24 N.E.3d at 654.

The first prong of the *Dombroski–Belvedere* test for piercing the corporate veil—whether the corporation had a "separate mind, will, or existence of its own"—is a determination of

whether the corporation is merely the alter ego of its owner. See *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005). Under this prong, a plaintiff must show that "the individual and the corporation are fundamentally indistinguishable." *Id.* In determining whether a corporation possesses its own identity or is merely an alter ego of its owner, Ohio courts consider factors such as whether: (1) corporate formalities are observed, (2) corporate records are kept, and (3) the corporation is financially independent. *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 363 (6th Cir. 2008). The Sixth Circuit has also instructed courts to consider several additional factors, including, "(1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation." *Id.*, see also *Fortress Value Recovery Fund I, LLC v. Columbus Components Grp. LLC*, No. 1:11-CV-00200, 2011 WL 1130442, at *4 (N.D. Ohio Mar. 28, 2011)(Gwin, J.).

As to prong 1 of the test, control, SASC alleged that "Peyton owns and operates SSC" and that APlus "is an entity operated and controlled by Peyton . . . ." (Doc. 1, Compl. at ¶¶4, 10). Defendants' Answer admits that "Peyton is the sole shareholder of and operates SSC . . . ." (Doc. 21, Answer at ¶8.) "[T]he question of whether [a director] exercised a degree of control over [a corporation] justifying [a] Court's holding it accountable . . . is a fact-sensitive question which . . . should not be answered until the Plaintiffs have had some opportunity to conduct discovery on this matter.*" Bledsoe v. Emery Worldwide Airlines*, 258 F. Supp. 2d 780, 787 (S.D. Ohio 2003). Given the leniency shown with regard to this prong, Plaintiff has sufficiently pleaded it.

As to prong 2, control exercised to commit fraud, an illegal act, or a similar unlawful act against the person seeking to disregard the corporate entity, SASC has alleged that:

> • Peyton caused SSC to dispose of some or all of the OSE[1] kits in its possession by fraudulently transferring the OSE kits to APlus in order to hinder or defraud SASC, its creditor. (Doc. 1, Compl. at ¶29.)
>
> • Peyton and SSC concealed the fraudulent transfer from SASC and, upon information and belief, fraudulently transferred the OSE kits after SASC threatened SSC with this lawsuit. (Id. at ¶30.)
>
> • Peyton's and SSC's transfer to APlus of OSE kits allows APlus, and Peyton and/or SSC indirectly, to, among other things, unfairly compete against SASC utilizing the very Kits SASC has available for its exclusive use and sale to its customers. (Id. at ¶32.)
>
> • The transfer from SSC to APlus, an affiliated entity likely owned and controlled by Peyton and/or SSC, was to an insider. (Id. at ¶51.)
>
> • Peyton and/or SSC have retained possession or control of the property transferred to APlus after the transfer. (Id.)
>
> • Peyton and SSC concealed the transfer of the OSE kits from SASC. (Id.)
>
> • SSC had been threatened suit by SASC before the transfer was made, with which Peyton was aware. (Id.)
>
> • Peyton's and SSC's fraudulent transfer occurred shortly before the Termination Date, at which time SSC is obligated to sell SASC all unsold Kits in its possession and to reimburse SASC all remaining Unused Advances. (Id. at ¶31.)

These allegations meet prong two of the Ohio corporate veil piercing test.

As to prong three, that injury or unjust loss resulted, SASC alleges that as a direct result of all the unlawful conduct on the part of Peyton identified in prong two, SASC has suffered damages, (Doc. 1, Compl. at 54), including losses totaling approximately $2.2 million-worth of

---

1 "Open Science Foundation" products.

materials. (Id. at 21). This satisfies the pleading requirements for prong three of the Ohio corporate veil piercing test.

Plaintiff additionally seeks to hold Peyton individually liable for his own torts as an agent acting on behalf of his principal. *See Gilvin v. FCA US LLC*, No. 1:18-cv-00107, 2020 U.S. Dist. LEXIS 163000, at *13 (S.D. Ohio 10 Sep. 8, 2020) (citing *Adamo Equipment Co. v. Alexander & Alexander, Inc.*, 821 F.2d 649 (6th Cir. 1987). "[I]t is a generally accepted proposition of agency and tort law that even a disclosed agent, acting on behalf of his principal, is personally liable for his own torts." *Id.* Under Ohio law corporate officers may be held personally liable for their tortious conduct carried out on behalf of the corporation. *Bowes v. Cincinnati Riverfront Coliseum*, 12 Ohio App.3d 12, 19, 12 Ohio B. 97, 465 N.E.2d 904, 911 (Ohio Ct. App. 1983); *Schaefer v. D. & J. Produce*, 62 Ohio App.2d. 53, 58, 403 N.E.2d 1015, 1019 (Ohio Ct. App. 1978).

Rule 9(b) requires fraud be pled with particularity including claims under the Ohio Uniform Fraudulent Transfer Act which alleges transfers "were made with the actual intent to hinder, delay or defraud one or more creditors" of the transferor. *Van-American Ins. Co. v. Schiappa*, 1291 F.R.D. 537, 542-43 (S.D. Ohio 2000); *see also MedChoice Fin., LLC v. ADS All. Data Sys., Inc*., 857 F. Supp. 2d 665, 676 (S.D. Ohio 2012) ("When a cause of action seeks to pierce the corporate veil on the basis of fraud, it is subject to the heightened pleading requirements of Rule 9(b)").

In the Complaint, SASC alleges that Peyton has personally committed tortious acts in Ohio (Doc. 1, Compl. at ¶6), including allegedly causing SSC to dispose of some or all of SASC's materials in its possession by fraudulently transferring SASC's materials to APlus in order to hinder or defraud SASC, its creditor, (*id*. at ¶29) and concealed the allegedly fraudulent

transfer after SASC threatened Peyton with this lawsuit (*id*. at ¶30). These allegations sufficiently allege a cause of action for fraudulent transfer against Peyton individually.

Peyton is potentially a Debtor Under Ohio Revised Code §1336.04 if Plaintiff is successful in piercing the corporate veil. In Ohio, an individual found liable under a corporate veil piercing theory is put in the shoes of the underlying entity, and if that entity was a contractual debtor, the individual automatically becomes a debtor in the same way as the entity. *See*, *e.g.*, *Fortress Value Recovery Fund I, LLC*, 2011 U.S. Dist. LEXIS 32663, at *17 (finding sufficient allegations to hold the individual defendant liable in the same way as the underlying entity); *see also Cap City Dental Lab*, 2016 U.S. Dist. LEXIS 118570, at * 19. Moreover, Ohio Revised Code §1336.01(F) defines "debtor" in the context of fraudulent transfer as "one who is liable on a claim." Ohio Revised Code § 1336.01(C) defines "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

Here, because SASC alleges that SSC is liable on the underlying claim of being a debtor, and Peyton is allegedly an alter ego of SSC, Peyton is potentially also a debtor. *See Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005) (affirming the treatment of the individual and the corporation as one and the same under the alter-ego doctrine because their conduct was indistinguishable). The Ohio Revised Code makes no reference to requiring contractual nexus. Accordingly, SASC has sufficiently alleged that Peyton should be found liable for the allegedly fraudulent transfer of Kit materials from SSC to APlus. (*See* Doc. 1, Compl. at ¶¶48-54.) For all these reasons, Peyton's contention that he cannot be found to be a debtor fails.

Finally, Peyton and SSC both assert that the alleged transfer of SASC's materials to APlus cannot qualify as a fraudulent transfer because APlus is a fictitious name of SSC. SASC

alleges SSC is a "supplier and reseller of school supplies and educational materials, including the Educational Products supplied on behalf of SASC." (Doc. 1, Compl. at ¶9.) APlus, on the other hand, is the alleged transferee to whom Peyton and SSC allegedly fraudulently transferred materials that belonged to SASC in order to have APlus sell the materials under its name instead of the SSC name, allegedly defrauding SASC. (Doc. 1, Compl. at ¶¶29, 32.)

The Ohio Revised Code § 1336.01(L) defines "transfer" as "'every direct or indirect, absolute, or conditional, and voluntary or involuntary method of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance. Ohio Rev. Code § 1336.01(L). Peyton asserts that no transfer at all occurred, and nor did any concealment of any transfer. However, this is contrary to the notion that "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true." *Tucker*, 539 F.3d at 549. Therefore, SASC's allegations that "Peyton caused SSC to dispose of some or all of the OSE kits in its possession by fraudulently transferring the OSE kits to APlus in order to hinder or defraud SASC" must be taken as true. (Doc. 1, Compl. ¶29.)

Peyton argues that even if there was a transfer that was concealed "there was not and could not be, as a matter of law, a transfer to fictitious trade name." (Doc. 39, Mot. at 10.) SSC mirrors this argument in its motion to dismiss. (Doc. 40.) SSC asserts that it could not have committed a fraudulent transfer to APlus, because APlus is a fictitious entity. (Doc. 40, PageID 1079.) SSC refers the Court *to In re Wolf*, 595 B.R. 735 (Bankr. N.D. Ill. 2018)("one clearly cannot transfer property to oneself. It is a conceptual absurdity.") *In re Wolf* at 789, fn. 43.

While the logic of the Bankruptcy Court for the Northern District of Illinois is persuasive, under Ohio law "[a]n action may be commenced or maintained against the user of a trade name or fictitious name whether or not the name has been registered or reported in compliance with

section 1329.01 of the Revised Code." Ohio Rev. Code §1329.10(C). Moreover, Ohio law further provides that a transfer can in fact be made from an individual, such as Peyton here, to an insider, which includes "a corporation of which the debtor is a director, officer, or person in control," or "an affiliate," among many others. Ohio Rev. Code §1336.01(G); *see also Rhodes v. Sinclair*, 2012-Ohio-5848, ¶ 40 (Ohio Ct. App. 2012) (finding that an individual made a fraudulent transfer to an insider, notably a company which he had organized and for which he served as statutory agent).

The Ohio Supreme Court has held that a fictious name can be sued and have a judgment enforced against them, even against the objections of the user of the fictitious name. *See Family Med. Found., Inc. v. Bright*, 772 N.E.2d 1177, 1178 (Ohio 2002) (answering in the affirmative the certified question "[d]oes R.C. 1329.10(C) permit a plaintiff to commence or maintain an action solely against a fictitious name, or must the action be commenced and/or maintained against the user of the fictitious name?"). Therefore, under the Ohio Uniform Fraudulent Transfer Act Count IV survives.

**Plaintiff's Motion to Dismiss (Doc. 26.)**

SASC moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss each count in the Counterclaim. (Doc. 21.)

**Standard**

To survive a motion to dismiss under Rule 12(b)(6), a challenged pleading "must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 66, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). A complaint need not contain "detailed factual allegations," but must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955.

In considering whether a counterclaim meets the requisite standard to survive a motion to dismiss, the Court must construe the counterclaims in the light most favorable to the non-moving party "and accept all allegations as true." *Keys v. Humana, Inc.*, 882. F.3d 579, 588 (6th Cir. 2018). In other words, the court must draw all reasonable inferences in favor of the non-moving party. See *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "The Supreme Court took pains to stress in both *Twombly* and *Iqbal* that what is required at the pleading stage is a plausible, not probable, entitlement to relief." *Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 868 (6th Cir. 2012).

**Count 1 – Breach of Contract**

SSC's first counterclaim is for breach of contract. To state a claim for breach of contract, SSC must allege: 1) the existence of a contract, 2) performance by the non-breaching party, 3) breach by the other contracting party, and 4) damage or loss to the non-breaching party. *See*, *e.g.*, *Nilavar v. Osborn*, 127 Ohio App.3d 1, 11, 711 N.E.2d 726, 732 (Ohio Ct. App. 1998). The non-breaching party must also demonstrate mutual assent, as shown by an offer and acceptance, consideration, a "'meeting of the minds' and that the contract was definite as to its essential terms." *Id*.

The Counterclaim alleges a longstanding business relationship between Plaintiff and Defendant in which SSC provided services and supplies for Plaintiff's educational material reselling business. (Doc. 21, Counterclaim, ¶¶ 1 and 2). The Counterclaim alleges a vendor agreement as a basis for the Counterclaim, as well as related statements of work. (*Id*. at ¶¶ 3, 4). The Counterclaim alleges that in July 2021, Plaintiff offered and SSC agreed to a contract that required SASC to provide a one-time 18-month forecast to SSC specifically related to Open Science Education products in order to induce SSC to continue the business relationship between them with regard to Open Science Education products, allegedly effectively guaranteeing 18 months of Open Science Education business to SSC. (Doc. 21, PageID 601, Counterclaim, ¶ 6.)

SSC and Peyton attached the vendor agreement to the counterclaim, but do not point to any language in the contract that would support the existence of the contract term alleged.

The Counterclaim alleges further that SASC breached that alleged agreement by failing to provide such a forecast. (Doc. 21, Counterclaim, ¶ 7.) That failure allegedly hindered and damaged SSC in its own effort to serve under the agreement. (Doc. 21, Counterclaim, ¶ 7.) The Counterclaim alleges that SSC reasonably relied on SASC to provide the contractually required forecast to be able to timely and effectively plan for, source, and prepare educational kits which were the subject of the relationship between the parties. (Doc. 21, Counterclaim, ¶ 31.)

SASC then terminated the agreement by letter dated December 9, 2022, with an effective termination date of April 23, 2023. (Doc. 21-3; PageID 683, Counterclaim, ¶ 8; Exhibit C to Answer.) The Counterclaim alleges an adverse impact on SSC's business and monetary damages as a result of SASC's breach of this requirement. (Doc. 21, Counterclaim, ¶¶ 32, 33.) The breach is not adequately pleaded, as SSC and Peyton point to no language in the contract that obliged SASC to make any purchases based upon forecasts.

13

The Counterclaim alleges damages in the amount of $4,000,000.00 allegedly resulting from the alleged breach. (Doc. 21, Counterclaim, ¶¶ 32, 33.) The lack of a forecast by SASC for "ala carte" or "long lead time" Open Science Education materials, a separate portion of the agreement, also allegedly caused SSC damage in the amount of $500,000.00. (Doc. 21, Counterclaim, ¶ 34.)

The Counterclaim also alleges that SASC failed or refused to pay a bonus due January 31, 2023, to SSC under the alleged agreement. (Doc. 21, Counterclaim, ¶ 35.) The Court has found this language. The contract obliges SASC to pay SSC "Based on SASC approved annual budgeted sales goal (ABSG) SASC will pay SSC a bonus of:[(amounts ranging from $50,000 for 100% or more to $0 for Less than 80% of the annual budgeted sales goal] Payable January 31st of the following year." (Doc. 4-1, PageID 163.) Defendant has successfully pleaded breach of a commitment to pay this bonus.

The Counterclaim alleges that a variety of other expenses remain unpaid by SASC. (Doc. 21, Counterclaim, ¶ 36.) SSC cites the Court to Doc. 21-4, PageID 684-703, to support this allegation, but these pages are just invoices, one of which asserts "Upcharge 25% for Unforecast Sales/Domestic Purchasing" for $30,068.60. (Doc. 21-4, PageID 685). Defendant does not point the Court to any language that creates this contractual obligation.

SASC takes issue with a calculation of a portion of the damages alleged, an 8% percent figure, which is a matter of contract construction. SASC contends that since SSC did not ship the books in question, the alleged 8% charge does not apply. SSC asserts that "receiving and handling" charge is clearly expressly in Statements of Work to include receiving and handling not just shipping and cites the Court to Doc. 21-1, PageID 626, Statement of Work. The Court does not see the word "receiving" on that page, nor any reference to 8% and SSC and Peyton do

not explain where they come from. Count 1 of the Counterclaim, therefore, fails to state a claim on which relief can be granted and must be dismissed, except for the portion alleging breach of the obligation to pay the bonus.

**Count 2 - Abuse of Process**

SSC's second counterclaim is for abuse of process. To state a claim for abuse of process, SSC must establish the following elements: (1) "a legal proceeding that has been set in motion in proper form and with probable cause"; (2) "the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed"; and (3) "direct damage has resulted from the wrongful use of process." *All Metal Sales, Inc. v. All Metal Source, LLC*, No. 1:10 CV 2343, 2011 WL 867020, at *1 (N.D. Ohio Mar. 11, 2011). "The key to the tort of abuse of process is the purpose for which process is used once it is issued." *Gliatta v. Tectum, Inc.*, 211 F. Supp. 2d 992, 1010 (S.D. Ohio 2002).

SSC's counterclaim fails at the first element. Rather than concede that SASC initiated this lawsuit in proper form and with proper cause, SSC alleges in the Counterclaim that SASC's Complaint was brought "without any factual or legal support, evidence, probable cause, or reasonable basis." (Doc. 21, Counterclaim ¶ 20; *id*. ¶ 40 (incorporating paragraphs 1-38 into Count 2); *id*. ¶¶ 47, 51 (further alleging lack of probable cause). Even SSC's Response to the Motion only points to things it did not allege, never directing the Court to where it alleged the lawsuit was properly initiated. (Doc. 34, PageID 1041-42).

SSC "cannot base [its] abuse of process claim upon the assertion that [SASC's] action was improperly initiated" and, in fact, failure to allege that the action was "commenced in proper form and with probable cause" is "fatal," since the nature of the tort is that a case was properly initiated and only later perverted. *Stanley v. Historic Newark Basket, LLC*, No. 2:22-cv-1783,

2023 WL 2652567, at *5 (S.D. Ohio Mar. 27, 2023) (dismissing abuse of process claim). For this independent reason Count 2 will be dismissed.

SSC also fails to set forth the second element. A claim for abuse of process does not "lie for the wrongful bringing of an action but for the improper use, or abuse of process, *i.e.*, using process with an ulterior motive." *Gliatta*, 211 F. Supp. 2d at 1010. Thus, SSC must allege facts indicating that SASC took "a further act in the use of process not proper in the regular course of conduct of the proceeding." *Pastian v. Int'l Credit Sys., Inc.*, No. 3:17-CV-00252, 2018 WL 1035207, at *2 (S.D. Ohio Feb. 23, 2018) (dismissing abuse of process claim); *Hahn v. Star Bank*, 190 F.3d 708, 718 (6th Cir. 1999) ("[T]here is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.").

The Counterclaim does not allege a further act in the use of process not proper in the regular course of conduct of the proceeding. SSC does not allege that SASC perverted the judicial process for an ulterior or collateral purposes. Rather, SSC only alleges in conclusory fashion that SASC brought this lawsuit to "accomplish an ulterior purpose for which it was not designed, specifically to preclude, prohibit, inhibit or intimidate [SSC] from competing with it in the school supply market and specifically in the OSE market." (Doc. 21, Counterclaim ¶ 42.) Just as in *Pastian*, such "conclusory statements" with "no facts asserted in support" are insufficient to state a claim for abuse of process, and, therefore, for this additional reason Count 2 will be dismissed. *Pastian*, 2018 WL 1035207, at *3; *Hahn*, 190 F.3d at 718.

**Count 3 - Malicious Prosecution**

SSC's third counterclaim is for malicious prosecution. The elements of a malicious prosecution claim are: (1) "malicious institution of prior proceedings against the plaintiff by the

defendant"; (2) "lack of probable cause for the filing of the prior lawsuit"; (3) "termination of the prior proceedings in the plaintiff's favor"; and (4) "seizure of the plaintiff's person or property during the course of the prior proceedings." *180 Indus., LLC v. Brunner Firm Co., L.P.A.*, No. 2:17-CV-937, 2020 WL 5847519, at *3 (S.D. Ohio Oct. 1, 2020). As such, a claim for malicious prosecution is "premature and must be dismissed" if the prior proceeding has not been adjudicated in the claimant's favor. *Sorin v. Bd. of Ed. of City Sch. Dist. of Warrensville Heights*, 464 F. Supp. 50, 52 (N.D. Ohio 1978) (dismissing malicious prosecution counterclaim as premature because the underlying claim had not been adjudicated).

Here, SSC asserts no prior proceeding and, instead, its malicious prosecution claim is entirely premised on this case, which remains pending and without any adjudication. Therefore, Count 3 will be dismissed for failure to state a claim.

### Count 4 - Wrongful Attachment

SSC's fourth counterclaim for wrongful attachment is based on the purported wrongful "attachment" of its property under the Court's Opinion and Order (Doc. 10) granting SASC's Ex Parte Motion for Issuance of Prejudgment Order of Attachment (Doc. 4). However, this claim is also premature. The Attachment Order is not "effective until [SASC] files with the Court a bond to [SSC] in the amount of Four Million Four Hundred Thousand Dollars." (Doc. 10, Attachment Order at 4.) SASC has not filed any bond relating to the Attachment Order and, instead, on April 28, 2023, the Clerk of the Court notified SSC that it had five business days to object to the Order. (*See* Doc. 20.) SSC did not object to the Order, but rather, filed its Motion to Discharge the Order (Doc. 23) before it became effective and before any of SSC's property was attached. Thus, SSC has no basis to assert a claim for "wrongful attachment" when none of its property has been

attached and the Attachment Order never became effective. The claim is not ripe. (*See Fredritz v. Hartman*, 150 Ohio St. 493, 497 (1948).

    The Court has since stayed the Attachment Order pending the resolution of SSC's Motion to Discharge the Order. (See Doc. 24, Order Granting Defendant's Request for Hearing and Staying Attachment.) As such, there is no factual or legal support for SSC's wrongful attachment claim and it therefore will be dismissed.

### Count 5 - Tortious Interference with a Prospective Business

    In Count 5, SSC brings a counterclaim for tortious interference against SASC. According to SASC, to state a claim for tortious interference with a prospective business, a party must plead: "a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into a business relationship with another." (Doc. 26, PageID 984, citing *Dish Network, LLC v. Fun Dish Inc.*, No. 1:08-cv-1540, 2010 WL 5230861, at *14 (N.D. Ohio July 30, 2010). SSC only "make[s] conclusory allegations that [SASC] interfered with [its] development and acquisition of customers, without stating that any particular customer was lost" and these "allegations are not enough to raise a right to relief above the speculative level." (*Id*.)

    This does not seem to the Court to be a correct statement of Ohio law. In Ohio, the "tortious interference doctrine is broad enough to protect a party's prospective business relationship with the general public." *Ancestry.com Operations, Inc. v. DNA Diagnostics Ctr., Inc.*, No. 1:15-CV-737, 2016 WL 3999315, at *5 (S.D. Ohio July 26, 2016)(citing *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc.*, 611 N.E.2d 955, 960-61 (Ohio Ct. App. 1992) ("[T]he common law right of action protects all advantageous business relations, real or potential, from improper interference.")).

    However, SSC asserts that SASC interfered with potential business by filing this lawsuit:

> Plaintiff knew, was aware and intended by filing the complaint at
> issue that it was interfering with Defendant SSC's business
> operations, contracting ability and anticipated contracts and
> business by tying up the company and the products in its
> possession in this litigation, precluding Defendants from obtaining
> sales and contracts for next school year.

(Doc. 21, PageID 616, Counterclaim ¶ 65.) This leads to the Court's consideration of SASC's

assertion that Count V of the counterclaim should be dismissed pursuant to the *Noerr-*

*Pennington* Doctrine.

The *Noerr-Pennington* Doctrine provides immunity from liability from claims based on a

party's efforts to petition governmental agencies for official action. *VIBO Corp., Inc. v. Conway*,

669 F.3d 675, 683-84 (6th Cir. 2012). The *Noerr-Pennington* Doctrine is "based on the right to

seek redress in the courts," and ensures that a party will "not be subjected to liability for its

attempt to have its rights protected by the courts unless that attempt is shown to have been a

mere 'sham.'" *Melea Ltd. v. Quality Models, Ltd.*, 345 F. Supp. 2d 743, 758 (E.D. Mich. 2004);

*see also Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 326 (6th Cir. 2006) (*Noerr-*

*Pennington* "protects litigants who seek redress of wrongs through judicial proceedings"). The

sham litigation exception to the *Noerr-Pennington* Doctrine withholds immunity from suit when

petitioning conduct is a "mere sham to cover what is actually nothing more than an attempt to

interfere directly with the business relationships of another." *Eastern R. Presidents Conference v.*

*Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961). There is a similar litigation privilege under

Ohio law. *See J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 308 n.14 (N.D.

Ohio 2021) (recognizing that Ohio's litigation privilege is consistent with the *Noerr-Pennington*

Doctrine).

Count 5 of SSC's Counterclaim is premised on SASC's initiation of this lawsuit. (*See* Doc. 21, Counterclaim ¶¶ 64-72). Because Count 5 of the Counterclaim is barred by the *Noerr-Pennington* Doctrine, it will be dismissed.

**Count 6 - Promissory Estoppel**

Defendants assert a claim of promissory estoppel through Count 6 of the Counterclaim. To state claim for promissory estoppel, Defendants must allege: (1) "a clear and unambiguous promise"; (2) "reliance on the promise"; (3) "reliance is reasonable and foreseeable"; and (4) "the relying party was injured by his or her reliance." *Holmes v. Wilson*, No. 2:08-CV-602, 2009 WL 3673015, at *4 (S.D. Ohio Oct. 30, 2009). However, "Ohio law bars a promissory estoppel claim when there is an express contract between the parties*." Loadman Grp., L.L.C. v. Banco Popular N. Am.*, No. 4:10-cv-1759, 2013 WL 1150125, at *9 (N.D. Ohio Mar. 19, 2013). *Loadman*, upon which SSC relies, granted summary judgment.

Here, SSC contests whether their actions are governed by an express contract. When the question of whether an express agreement governs the issue in dispute remains unresolved, a plaintiff is free to state her claims in the alternative. *Miranda v. Xavier Univ.*, 594 F. Supp. 3d 961, 975 (S.D. Ohio 2022).

However, the Counterclaim does not allege factual support for: (1) a promise outside of the Agreement that SASC made to SSC, Peyton or APlus—let alone that SASC ever had a direct communication with any of them; (2) how SSC or Peyton detrimentally relied on the unspecified alleged promise; (3) how that reliance was reasonable or foreseeable; or, (4) how SSC and Peyton were injured by their reliance. (*See* Doc. 21, Counterclaim ¶¶ 75-79). Count 6, thus, is nothing more than a conclusory pleading that fails to meet the applicable pleading standard, and

for this reason will be dismissed. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.").

### Count 7 - *Quantum Meruit*

The Counterclaim asserts a claim for *quantum meruit* in Count 7, which requires them to allege that: (1) Defendants conferred a benefit on SASC; (2) SASC knew of the benefit; and (3) it would be unjust for SASC to retain the benefit without payment. *Fox Consulting Grp., Inc. v. Mailing Servs. of Pittsburgh, Inc.*, No. C-210250, 2022 WL 1100528, at *2 (Ohio Ct. App. April 13, 2022). Just as with Count 6, SSC points out that "Ohio law does not allow parties to seek damages under quasi-contractual theories of recovery . . . when a contract governs the relationship." *Cook v. Home Depot U.S.A., Inc.*, No. 2:06-CV-00571, 2007 WL 710220, at *8 (S.D. Ohio Mar. 6, 2007). Just as with Count 6, SSC contests whether their actions are governed by an express contract. When the question of whether an express agreement governs the issue in dispute remains unresolved, a plaintiff is free to state her claims in the alternative. *Miranda v. Xavier Univ.*, 594 F. Supp. 3d 961, 975 (S.D. Ohio 2022).

SASC points the Court to *Ruggles v. Bulkmatic Transp. Co.*, 2:03-cv-617, 2004 WL 5376213, at *6 (S.D. Ohio June 23, 2004) (dismissing *quantum meruit* claim because express contract governed the subject matter of the claim), but in *Ruggles*, it was established that a contract existed. Such is not the case here.

Count 7 fails because it sets forth a conclusory recitation of the elements of a claim for *quantum meruit*, (See doc. 21, Counterclaim ¶¶ 81-82,) which, as a matter of law, is insufficient to state a claim for relief under the applicable pleading standard. See *Iqbal*, 556 U.S. at 678.

### Conclusion

Because SASC, LLC has properly pleaded breach of contract and facts to support piercing the corporate veil, the Court **DENIES** Timothy Peyton's Motion for Judgment on the Pleadings, (Doc. 39),  and School Supply Connection, Inc's Motion For Judgment on The Pleadings. (Doc. 40.) Because of the deficiencies the Court has identified the Court **GRANTS IN PART AND DENIES IN PART** SASC, LLC's Motion to Dismiss for Failure to State a Claim. (Doc. 26.) All counterclaims except the first counterclaim for breach of a contract to pay bonuses are dismissed. Nevertheless, within 14 days of the date of this Decision and Entry, SSC and Peyton may amend their Counterclaim to replead their claims, mindful of the strictures of Fed. R. Civ. P. 11.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, March 13, 2024.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE